RENDERED:  MAY 16, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0748-MR

RUTH STEGER SVESTKA;
CAROLYN STEGER; AND JAMES M.
SVESTKA                                                          APPELLANTS


APPEAL FROM TODD CIRCUIT COURT
v.          HONORABLE JOE W. HENDRICKS, JR., JUDGE
ACTION NO. 22-CI-00074


MARGUERITE STEGER OAKES,
INDIVIDUALLY AND AS
MANAGER OF VANCE SPRINGS
FARM, LLC, AND AS A
MEMBER/UNIT HOLDER OF
VANCE SPRINGS FARM, LLC; AND
ROGER HOOPER, EXECUTOR OF
THE ESTATE OF MARY CHERRY
STEGER HOOPER                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND EASTON, JUDGES.

THOMPSON, CHIEF JUDGE:  Ruth Steger Svestka (Ruth), Carolyn Steger (Carolyn), and James M. Svestka (James; collectively Appellants) appeal from a final judgment of the Todd Circuit Court making final and appealable prior orders of summary judgment in favor of Appellees Marguerite Steger Oakes ("Marguerite") and Mary Cherry Steger Hooper ("Mary Cherry").[1]  After a thorough review of the record and the law, we find no error and affirm the judgment on appeal.

## FACTS AND PROCEDURAL HISTORY

Ruth, Carolyn, Marguerite, and Mary Cherry are four sisters who inherited a large, family farm from their parents.  In 2012, the sisters formed a Kentucky Limited Liability Company, Vance Springs Farms, LLC, as a vehicle to hold ownership of the farm.  Each sister transferred her respective interest in the farm to the LLC, and each in turn took a 25% membership interest.  On July 11, 2012, the sisters and the LLC executed an Operating Agreement which, among other things, dictated how the company was to be managed.

Pursuant to the Operating Agreement, the company was to be a manager-managed LLC.  Marguerite was named the initial manager of the company.  She had served in that capacity continuously until the events giving rise

---

[1] Mary Cherry is now deceased, and Roger Hooper, Executor of the Estate of Mary Cherry Steger Hooper, has been substituted for her as an Appellee by way of a separate order.

to this lawsuit took place.  In addition, the Operating Agreement contained a provision providing that Marguerite and her husband were entitled to continue living in the house located on the family farm and using portions of the surrounding yard and gardens to cultivate daylilies for a separate business owned by Marguerite.

Disagreements ultimately arose between the sisters, including an allegedly contentious annual meeting of members held in May of 2022.  In early July of 2022, Marguerite purchased Mary Cherry's 25% interest in the company.  Ruth and Carolyn provided notice to Marguerite of a special meeting to take place on July 10, 2022, the purpose of which was to determine whether Marguerite would be removed as manager pursuant to § 7.4 of the Operating Agreement.

Section 7.4 of the Operating Agreement states:

> At a meeting called expressly for that purpose, all or any lesser number of Managers may be removed at any time, for Cause, by the vote of Members holding a Voting Majority (excluding Units of Participation held by the Manager subject to removal). The Members shall not have the power or right to remove a Manager except for Cause.[2]

At the special meeting, Ruth and Carolyn voted to remove Marguerite as a manager, purportedly for "Cause" as defined in the Operating Agreement.  They also named James, Ruth's son, as replacement manager.

---

[2] Capitalized terms are defined elsewhere in the Operating Agreement.

Thereafter, Marguerite, in her capacity as manager and member of the LLC, filed the instant action in Todd Circuit Court seeking a declaration that her purchase of Mary Cherry's ownership interest was valid; that her removal as manager by Ruth and Carolyn was not valid; that she was entitled to money damages; and, that Ruth and Carolyn should be enjoined from future wrongful actions and required to abide by the Operating Agreement. Appellants answered with a general denial, and counterclaimed alleging, among other claims, that Marguerite violated her fiduciary duty to the other members of the LLC.

On February 2, 2023, Marguerite and Mary Cherry moved the trial court for a temporary injunction, seeking reinstatement of Marguerite as manager. Appellants filed a written response, and the circuit court conducted a hearing on February 17, 2023. On March 15, 2023, the circuit court entered an order granting a temporary injunction reinstating Marguerite as manager of the company and requiring Marguerite and Mary Cherry to post a bond in the amount of $100, without surety.

Appellants then filed a motion for interlocutory relief pursuant to RAP[3] 20(B) before a panel of this Court, following the trial court's entry of the March 15, 2023 order granting a temporary injunction. Marguerite and Mary Cherry filed a response to the motion on April 15, 2023.

---

[3] Kentucky Rules of Appellate Procedure.

A panel of this Court entered an order on June 23, 2023, granting in part and denying in part Appellants' motion for interlocutory relief. The panel declined to dissolve the circuit court's temporary injunction of March 15, 2023, but directed the trial court to conduct a hearing to determine an appropriate bond amount. Once this determination was made, the trial court was directed to require Marguerite and Mary Cherry to post a bond in that amount, with appropriate surety in accordance with CR[4] 65.05(1). The temporary injunction issue was rendered moot when Marguerite subsequently purchased the interests of Ruth and Carolyn by exercising Marguerite's right of first refusal after Ruth and Carolyn offered to sell their interests to a third party.

On August 2, 2023, Appellants filed a motion for partial summary judgment on the remaining issues. Two days later, Marguerite and Mary Cherry also filed a motion for partial summary judgment. After a hearing, the circuit court granted Marguerite and Mary Cherry's motion for partial summary judgment on September 13, 2023.

On March 1, 2024, Mary Cherry filed a motion for summary judgment on the remaining issues, arguing that since Ruth and Carolyn had sold their interest in the LLC, and as James never had an ownership interest, their claims against her regarding her transfer of ownership to Marguerite were moot.

---

[4] Kentucky Rules of Civil Procedure.

On the same day, Marguerite also filed a motion for partial summary judgment. She argued that Appellants had no standing to claim that she wrongfully caused certain expenses to be applied to the farming operation for income tax purposes. She also asserted that the Operating Agreement expressly gave her, as manager, the exclusive authority to make all decisions regarding taxes. A hearing on the motions was conducted, resulting in an April 12, 2024 order granting both motions.

Lastly, on April 19, 2024, the Todd Circuit Court rendered a final judgment, which granted Appellants' October 18, 2023 "Renewed Motion for Partial Summary Judgment Resolving the Plaintiff's Claim for Damages in the Complaint and Amended Petition and Notice of Hearing." In its final judgment, the circuit court found that the depositions and affidavits failed to support Marguerite's claim for recoverable individual damages; that her mileage expenses to meet with her attorney and attend court were not recoverable; and, that she failed to demonstrate medical issues sufficient to support an award of damages.[5] This appeal followed.[6]

---

[5] The April 19, 2024 final judgment is somewhat confusing. It purports to grant "Plaintiff's October 8, 2023, Motion for Summary Judgment," though also states that it is adjudicating Defendants' [Appellants] October 18, 2023 renewed motion for summary judgment. We believe the latter is correct.

[6] Appellants' Notice of Appeal states that Appellants are appealing from the Todd Circuit Court's April 19, 2024 final judgment, and subsequent order entered on May 29, 2024 overruling their motion to alter, amend, or vacate the April 19, 2024 final judgment. Appellants' written argument, however, centers on the circuit court's September 12, 2023 order granting summary judgment dismissing all of Appellants' counterclaims against Marguerite, and its April 11, 2024

## STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Id*. "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact." *Id.* Finally, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

---

summary judgment dismissing all counterclaims against Mary Cherry. The September 12, 2023 and April 11, 2024 summary judgments in favor of Marguerite and Mary Cherry were not made final and appealable; as such, they are now properly before us having reached finality by virtue of the April 19, 2024 final judgment which was designated as final and appealable. *See Tax Ease Lien Investments 1, LLC v. Brown*, 340 S.W.3d 99, 101 (Ky. App. 2011).

## ARGUMENTS AND ANALYSIS

Appellants first argue that the circuit court erred in relying solely on the terms of the Operating Agreement to define the scope of Marguerite's fiduciary duty, while improperly ignoring KRS[7] 275.170 and the common law. They assert that since the circuit court did not properly examine or apply the statutory and common law, it necessarily follows that the circuit court failed to correctly define the scope of Marguerite's fiduciary duty.

As part of this argument, Appellants maintain that Marguerite's June 4, 2022 purchase of Mary Cherry's shares created a clear conflict of interest because it gave Marguerite a 50% ownership interest in the LLC. They argue that this would effectively allow Marguerite to deadlock the LLC's strategic business operations, as well as some day to day operations. Appellants maintain that Marguerite now has "near total" managerial authority resulting from her purchase of Mary Cherry's shares, which cannot be held in check absent judicial intervention. They argue that this imbalance of power would have been avoided if the circuit court had properly applied the statutory law and case law to determine the proper scope of Marguerite's fiduciary duties to Ruth and Carolyn. They request an opinion reversing and remanding the orders on appeal, with instructions

---

[7] Kentucky Revised Statutes.

to apply the robust statutory and common law setting out Marguerite's fiduciary duties.

In response, Appellees first direct our attention to RAP 32(A)(4), which requires that an appellant's brief shall include "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Appellees note that Appellants attempted to comply with this rule by stating that this argument was preserved by Appellants' motion to alter, amend, or vacate the final judgment. Appellees point to case law standing for the proposition that a party may not rely on a motion to alter, amend, or vacate to raise new arguments and introduce new evidence that should have been presented prior to entry of the judgment. As such, they contend that Appellants' first argument is not properly preserved for review, and should be examined for manifest injustice only.[8]

As it is clear from the record that the issue of Marguerite's fiduciary duties was argued by the parties and addressed by the circuit court below, we will ignore a deficiency in preservation, if any, and proceed with the review. *See K.M.J. v. Cabinet for Health and Family Services*, 503 S.W.3d 193, 196 (Ky. App. 2016).

---

[8] Appellees have moved to strike Appellants' brief as not conforming to the RAP. This motion is denied by way of a separate order entered contemporaneously with this Opinion.

KRS 275.170 states,

Unless otherwise provided in a written Operating Agreement:

(1) With respect to any claim for breach of the duty of care, a member or manager shall not be liable, responsible, or accountable in damages or otherwise to the limited liability company or the members of the limited liability company for any action taken or failure to act on behalf of the limited liability company unless the act or omission constitutes wanton or reckless misconduct.

(2) The duty of loyalty applicable to each member and manager shall be to account to the limited liability company and hold as trustee for it any profit or benefit derived by that person without the consent of more than one-half (1/2) by number of the disinterested managers, or a majority-in-interest of the members from:

> (a) Any transaction connected with the conduct or winding up of the limited liability company; or

> (b) Any use by the member or manager of its property, including, but not limited to, confidential or proprietary information of the limited liability company or other matters entrusted to the person as a result of his or her status as manager or member.

(3) In determining whether a transaction has received the approval of a majority-in-interest of the members, membership interests owned by or voted under the control of the member or manager whose actions are under review in accordance with subsection (2) of this section, and membership interests owned by an entity owned by or voted under the control of that member or manager, shall not be counted in a vote of the members

to determine whether to consent, and the membership interests shall not be counted in determining whether a quorum, if required by a written Operating Agreement, exists to consider whether to consent. That a transaction was fair to the limited liability company shall not constitute a defense to the failure to request and receive the required consent of the disinterested managers or members.

(4) A member of a limited liability company in which management is vested in managers under KRS 275.165(2) and who is not a manager shall have no duties to the limited liability company or the other members solely by reason of acting in his or her capacity as a member.

Thus, KRS 275.170 provides in relevant part that, 1) a written Operating Agreement supplants the statutory language (KRS 275.170); and, 2) on a claim of breach of duty of care, a manager is liable only for wanton or reckless misconduct (KRS 275.170(1)).

The focus of Appellants' argument on this issue is its claim that "[t]he June 4, 2022, purchase created a clear conflict of interest between Marguerite's individual interests and her managerial duties. By purchasing Mary Cherry's shares, Marguerite now enjoys more control over the LLC because her 50% vote blocks any other interest than her own from passing."[9] The question for our consideration, then, is whether the Todd Circuit Court properly determined that Marguerite's purchase of Mary Cherry shares did not constitute a breach of

---

[9] Appellants' brief at p. 8.

Marguerite's fiduciary duty as either member or manager of the LLC. We agree with the circuit court that Marguerite's purchase of Mary Cherry's shares did not constitute a breach of Marguerite's fiduciary duty.

In its September 13, 2023 order granting Marguerite's motion for summary judgment on Appellants' counterclaim, the Todd Circuit Court determined that the Operating Agreement expressly granted to Marguerite, in her capacity as member of the LLC, the right to purchase another member's shares with no right of first refusal being granted to the other members. This conclusion is supported by the record and the law.

The Operating Agreement is controlling. KRS 275.170. The Operating Agreement states at Article 8.1(i) that, "[n]otwithstanding anything in this Agreement to the contrary, a Transfer to a Family Transferee will be permitted and will not trigger the right of first refusal provisions of this Article 8[.]" Article 15 defines "Family Transferee" to include an existing member of the LLC. Marguerite is an existing member of the LLC. It follows that per the terms of the Operating Agreement, Marguerite was a Family Transferee who had the right to purchase Mary Cherry's shares with said purchase not triggering a right of first refusal with Ruth and Carolyn. The Todd Circuit Court properly so found.

We must also note that this issue was previously addressed in an order of this Court entered on June 23, 2023. That order disposed of a motion for

-12-

interlocutory relief made by Ruth, Carolyn, and James after the circuit court's entry of a March 15, 2023 order granting a temporary injunction. The March 15, 2023 order enjoined Appellants from removing Marguerite as manager after her purchase of Mary Cherry's shares.

In adjudicating the interlocutory appeal from the order reinstating Marguerite as manager, the panel of this Court stated that,

> [m]ovants argue that the trial court erred by concluding that Marguerite had not breached her fiduciary duties to the other members by purchasing Mary Cherry's interests without their knowledge and consent. The Operating Agreement, however, addresses this point directly. While the Operating Agreement contains several provisions restricting transfers of the members' interests in derogation of the rights of the company or other members, including rights of first refusal, a transfer to a "Family Transferee" is specifically excepted from this restriction. According to Article 15 of the Operating Agreement, a "Family Transferee" includes another member, such as Marguerite, receiving a transfer of interests. Marguerite cannot breach fiduciary duties by completing a purchase that the parties specifically contemplated in their Operating Agreement. Common law fiduciary duties are intended to be imposed "in the absence of contrary provisions in the limited liability company operating agreement." *Patmon v. Hobbs*, 280 S.W. 3d 589, 594 (Ky. App. 2009).

In its September 13, 2023 order granting Marguerite's motion for summary judgment on Appellants' counterclaim, the circuit court noted this Court's June 23, 2023 order reinstating Marguerite. In the September 13, 2023 order, the circuit court stated that,

-13-

[t]he Court of Appeals directly rejected . . . [Appellants'] argument and found this contention was without merit. Whether or not the upholding on appeal of the preliminary injunction technically constitutes the "law of the case" or not, the reasoning upholding this court's decision remains sound and there is no good reason to depart from this court's prior decision and that reasoning while ruling on this motion.

Appellants argue that the circuit court improperly applied the law of the case doctrine to conclude that Marguerite's purchase of Mary Cherry's shares was compliant with the Operating Agreement. We disagree. The circuit court expressly stated that even if the preliminary injunction does not constitute the law of the case, the reasoning remains sound and supports Marguerite's purchase of Mary Cherry's shares. Even though the circuit court did not expressly apply the law of the case doctrine, we believe that application of the doctrine would be appropriate in the instant case.

The law of the case doctrine is an iron rule, universally recognized, that an opinion or decision of an appellate court in the same cause is the law of the case for a subsequent trial or appeal[.] That doctrine is the mechanism by which matters once litigated and finally determined remain so.

*TECO Mechanical Contractor, Inc. v. Kentucky Labor Cabinet*, 474 S.W.3d 153, 158 (Ky. App. 2014) (internal quotation marks and citation omitted).

Based on *TECO*, the law of the case doctrine would be properly applied in the matter before us. Irrespective of whether the circuit court expressly

-14-

employed the doctrine, however, the circuit court used the same reasoning relied on by this Court in the June 23, 2023 order granting interlocutory relief. We may affirm a lower court's decision for any reason supported by the record. *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009). The circuit court applied the correct law to the facts, properly relied on the Operating Agreement and KRS 275.170, and we find no error. The case law cited by Appellants on this issue is distinguishable.

Lastly, Appellants argue that the Todd Circuit Court erred in incorrectly applying the legal standard for summary judgment; failing to consider all evidence after the injunction; and, failing to make findings of fact sufficient to support the entry of summary judgment.

In its September 13, 2023 order granting Marguerite's motion for summary judgment on Appellants' counterclaim, the circuit court found that the counterclaim arose from Appellants' contention that Marguerite violated her duties of loyalty, fair dealing, and good faith when she purchased Mary Cherry's interest in the LLC without first notifying the other members to give them the opportunity to purchase the shares. As noted above, in disposing of this argument the circuit court first looked to KRS 275.170, which provides that the terms of an operating agreement supplant the statutory language. It found that Article 8 of the Operating

-15-

Agreement expressly provides that a transfer to a Family Transferee shall be permitted and will not trigger the right of first refusal.

KRS 275.170 and the Operating Agreement demonstrate that Marguerite did not violate her fiduciary duty as manager when she purchased Mary Cherry's interest in the LLC. Having determined that Marguerite did not violate her fiduciary duty as manager, it follows that Mary Cherry did not engage in the "aiding and abetting" of Marguerite's purported breach as argued by Appellants. Based on this, and per *Scifres*, *supra*, the circuit court correctly found that there were no genuine issues as to any material fact and that Marguerite and Mary Cherry were entitled to a judgment as a matter of law.

## CONCLUSION

For the foregoing reason, we affirm the final judgment of the Todd Circuit Court.


ALL CONCUR.


BRIEFS FOR APPELLANTS:

Daniel N. Thomas
Mary E. Jocelyn
Hopkinsville, Kentucky

BRIEF FOR APPELLEES:

William G. Deatherage, Jr.
Hopkinsville, Kentucky