RENDERED: OCTOBER 17, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1339-MR

TYLER SETH YOUNG                                               APPELLANT

v.           APPEAL FROM GRAVES CIRCUIT COURT
             HONORABLE TYLER L. GILL, JUDGE
             ACTION NO. 21-CR-00419

COMMONWEALTH OF KENTUCKY                                        APPELLEE

AND

NO. 2024-CA-1392-MR

TYLER SETH YOUNG                                               APPELLANT

v.           APPEAL FROM GRAVES CIRCUIT COURT
             HONORABLE TYLER L. GILL, JUDGE
             ACTION NO. 22-CR-00370

COMMONWEALTH OF KENTUCKY                                        APPELLEE

** ** ** ** **

BEFORE:  CETRULO, KAREM, AND MOYNAHAN, JUDGES.

MOYNAHAN, JUDGE:  Appellant, Tyler Seth Young ("Young"), appeals the

Graves Circuit Court's denial of his motion for sentencing credit.  After careful

review of the record, we AFFIRM, albeit for different reasons than those stated by

the trial court.

## BACKGROUND

Young committed domestic violence against his girlfriend M.Q. on

three separate occasions in 2021.  The first two incidents occurred in April and

May of that year and were ultimately charged together in a single indictment.  In

September, before that indictment had been issued, Young physically assaulted

M.Q., verbally threatened her, took away her car keys and cell phone, and held her

against her will for several hours.  Separate charges were issued for the September

incident, resulting in a second indictment.  The circuit court consolidated the two

indictments for trial.

Prior to trial, Young was incarcerated in the Graves County Jail.

Recognizing that substance abuse played a contributory role in his behavior, the

court released him to the Next Step Sober Living rehabilitation facility on an

unsecured bond while he was awaiting trial.  However, Young violated his bond

conditions by leaving the facility without permission and was remanded back into custody. Upon his re-incarceration, Young's bond was set at $50,000, and he requested that amount be lowered. At a pretrial hearing the court agreed to reduce the bond amount to $10,000. The reduction was conditional on Young's wearing an ankle monitor and abiding by travel restrictions to pre-approved destinations. The court's written conditions contained the following language: "This order may not meet the criteria for home incarceration as defined by KRS 532.220." Both Young and his attorney read and signed the agreement which was incorporated into the court's order dated April 1, 2024.

Young entered guilty pleas in both cases under a plea agreement. The final charges were: two counts of second-degree assault, one count of second-degree strangulation, two counts of first-degree unlawful imprisonment, one count of first-degree wanton endangerment, and one count of fourth-degree assault. The Commonwealth agreed to exclude discharging a firearm conduct from the wanton endangerment charge. (Young had fired a handgun during this incident, but it was not pointed directly at M.Q. or anyone else.) This distinction meant that Young avoided classification as a violent offender under Kentucky Revised Statute ("KRS") 439.3401(1)(b)17., thereby retaining his eligibility for future home incarceration programs while also allowing for the possibility of parole after serving 20% of his sentence.

The day before his sentencing hearing, Young filed a motion with the court requesting that he be given 185 days—approximately six months—of credit towards his overall sentence for the time he wore the ankle monitor. KRS 532.120(3), however, requires that inmates first seek credit for pre-trial custody from the Department of Corrections.[1] Despite the trial court's involvement being premature, it found that the conditional bail release did not meet the statutory criteria for home incarceration pursuant to KRS 532.220 and denied Young's motion. In accordance with the Commonwealth's sentencing recommendations, the court then sentenced Young to seven years for the first indictment and five years for the second indictment. The Court ran the sentences consecutively—for a total of twelve years' imprisonment.

## PROCEDURAL HISTORY

This case was scheduled for an October 2024 trial in Graves Circuit Court. The parties reached a plea agreement during pretrial mediation, and the trial was cancelled. After sentencing, Young timely filed a Notice of Appeal, claiming that the trial court erred in denying his credit request for pretrial custody. Although the trial court had joined and heard the two criminal cases against Young

---

[1] "Time spent in custody prior to the commencement of a sentence as a result of the charge that culminated in the sentence shall be credited by the Department of Corrections toward service of the maximum term of imprisonment in cases involving a felony sentence and by the sentencing court in all other cases." KRS 532.120(3).

in a single proceeding, the Clerk of our Court properly notated two separate case numbers upon receipt of the record. In May 2025, the Commonwealth filed a motion to consolidate pursuant to Rule of Appellate Procedure ("RAP") 2(F)(2). Our Court entered an Order Consolidating on June 5, 2025. Thus, the two cases are considered as a single matter herein.

## STANDARD OF REVIEW

This case presents an issue of statutory interpretation predicated on factual findings related to an issue of law. The Kentucky Supreme Court states that upon appellate review of such cases, "[W]e utilize a clear error standard of review for factual findings and a de novo standard of review for conclusions of law." *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006) (citing *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004)).

## ANALYSIS

Young's primary argument is that the law of the case doctrine requires that he be awarded the requested sentencing credit. Law of the case doctrine recognizes "that an opinion or decision of an appellate court in the same cause is the law of the case for a subsequent trial or appeal however erroneous the opinion or decision may have been." *Brooks v. Lexington-Fayette Urb. Cnty. Hous. Auth.*, 244 S.W.3d 747, 751 (Ky. App. 2007) (quoting *Union Light, Heat & Power Co. v. Blackwell's Adm'r*, 291 S.W.2d 539, 542 (Ky. 1956)) (internal quotation marks

removed). Lengthy discussion of the doctrine is unnecessary here as it is inapplicable to this case. "As applied in Kentucky, the law of the case doctrine applies only to rulings by an appellate court and not to rulings by a trial court." *Dickerson v. Commonwealth*, 174 S.W.3d 451, 466-67 (Ky. 2005); *see also Scamahorne v. Commonwealth*, 376 S.W.2d 686, 687-68 (Ky. 1964).[2] Here, the trial court analyzed and ruled on a question that should have first been addressed to the Department of Corrections. Moreover, the trial court's prior statement was not a final legal ruling—much less one from an appellate court. Indeed, the language in the court's order explicitly warned that the ankle monitor arrangement might fail to meet the statutory criteria for home incarceration upon final sentence calculation. Thus, any invocation of the law of the case doctrine is wholly inapplicable here.

In 2020, in *Sanders v. Commonwealth*, 600 S.W.3d 266 (Ky. App. 2020), our Court handled a case with a similar procedural history. Three days before Sanders' sentencing, following his guilty plea, he made a motion for jail-time credit. *Id.* at 269. The trial court ruled against Sanders, citing the absence of electronic monitoring during his pre-trial release, but our Court declined to address

---

[2] Notably, Young quoted the "iron rule" language concerning law of the case doctrine from *TECO Mechanical Contractor, Inc. v. Kentucky Labor Cabinet*, 474 S.W.3d 153, 158 (Ky. App. 2014), but failed to recognize or apply the same quoted sentence's limitations on the doctrine to appellate court opinions or orders.

the merits because a new statute, adopted in 2011,[3] had "removed, in most instances, the trial courts' authority to determine issues of pretrial jail-time credit at the time of sentencing." *Id.* at 270. Although the facts of the pre-trial confinement in *Sanders* differ from Young's circumstances here, we nevertheless recognize that our Supreme Court has mandated such defendants exhaust their administrative remedies with the Department of Corrections before seeking judicial relief. *See Caraway v. Commonwealth*, 459 S.W.3d 849, 855 (Ky. 2015).

Since nothing in the record indicates Young pursued his 185-day credit request with the Department of Corrections, it was premature for any court to address his motion. Thus, we affirm the trial court's ruling denying relief, but do not reach the merits of Young's position regarding pretrial custody credit. "[I]t is well-settled that an appellate court may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009).

## CONCLUSION

For the reasons set forth above, the Graves Circuit Court's order denying the Appellant's motion for sentencing credit is hereby AFFIRMED.

ALL CONCUR.

---

[3] 2011 Kentucky Laws Ch. 2, §98 (House Bill 463).

BRIEF FOR APPELLANT:

William F. McGee, Jr.
Smithland, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

James Havey
Assistant Solicitor General
Frankfort, Kentucky